[COMMENT1] 

 

 

 

 

 

                                COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-246-CR

 

 

CHRISTOPHER FITZGERALD                                                  APPELLANT

STEWART

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 297th
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








A jury convicted Appellant Christopher Fitzgerald
Stewart of burglary of a habitation with a deadly weapon and assessed his
punishment at twenty-five years=
confinement in the Institutional Division of the Texas Department of Criminal
Justice.  The trial court sentenced
Appellant accordingly.  Appellant brings
five points on appeal, challenging the trial court=s denial
of his motion to suppress identification, the legal and factual sufficiency of
the evidence supporting the deadly weapon finding, the trial court=s
failure to instruct the jury on criminal trespass at the guilt phase, and the
trial court=s failure to properly instruct
the jury on parole at the punishment phase. 
Because we hold that the evidence supporting the deadly weapon finding
is legally insufficient, we modify the trial court=s
judgment to delete the deadly weapon finding. 
Because the trial court did not otherwise reversibly err, we affirm the
trial court=s judgment as modified.

Statement of Facts








Lilliana Cervantes was at her sister=s home
and heard a loud noise.  She called out,
but no one answered.  When she opened a
bedroom door, she saw Appellant.  He put
a pillowcase over her head, and they went around the house as he demanded
money.  He led her into the kitchen, and
she heard him get a knife.  She uncovered
her eyes slightly, and saw him holding a knife, but covered her eyes again as
he turned around.  Appellant did not threaten
her with the knife.  Appellant took two
rings, her bracelet, the cordless phone batteries, a T-shirt, and the knife
with him.  When he left, Cervantes ran
outside and flagged down a passing police car. 
That officer and another officer searched the house, and Cervantes gave
a description of Appellant.  Another
officer reported that a man had been seen climbing over a fence and entering a
wooded area not far from the site of the offense.  Officer Rodriguez went to this nearby
location and handcuffed Appellant as he came out of the wooded area.  Cervantes was brought to the scene, and she
identified Appellant.  The police found a
bracelet and cordless phone batteries in Appellant=s
pockets, but they did not find a knife.

Appellant was indicted for burglary of a
habitation with a deadly weapon.  The
indictment also contained an enhancement allegation based on a previous felony
conviction.  Appellant moved to suppress
the identification and all evidence recovered from his person, but the trial
court denied both motions.  Appellant
entered a plea of not guilty, but he pled true to the enhancement
allegation.  At trial, the trial court
admitted a photograph of the knife. 
Appellant objected to the lack of an instruction on criminal trespass in
the jury charge at the guilt phase and requested that it be added.  The trial court refused.  The jury convicted Appellant and returned an
affirmative finding regarding the deadly weapon.








The jury charge at punishment did not contain all
of the language in article 37.07, section 4(a) of the Texas Code of Criminal
Procedure.[1]  It omitted the sentence, AIf the
defendant is sentenced to a term of less than four years, he must serve at
least two years before he is eligible for parole.@[2]  No one objected to the jury charge at
punishment.  Appellant timely appealed.

                                 Identification













In his first point, Appellant argues that the
trial court erred by denying his motion to suppress the out-of-court
identification of Appellant because the police employed a one-man show-up that
was impermissibly suggestive.     As the
State points out, Aa pretrial identification
procedure may be so suggestive and conducive to mistaken identification that
subsequent use of that identification at trial would deny the accused due
process of law.@[3]  The issue is whether, if the procedure was
impermissibly suggestive, it gave rise to a substantial likelihood of
irreparable misidentification.[4]  The Neil court suggested factors to
consider in determining whether a procedure gives rise to a substantial
likelihood of irreparable misidentification: 
(1) the witness=s opportunity to view the actor,
(2) the witness=s degree of attention, (3) the
accuracy of the witness=s description of the suspect,
(4) the level of certainty at the time of confrontation, and (5) the time
between the crime and the confrontation.[5]  From a practical perspective, we note that
although a one-man show-up does not in and of itself violate due process, it
does carry with it a degree of suggestiveness. 
On the other hand, it also allows the police to quickly release a person
who has been seized but is not the perpetrator.  When
the police encountered Cervantes, she was in the front yard of her sister=s house,
which had just been burglarized.  The
police began an immediate search of the area and soon spotted Appellant.  He ran when he saw the police and tried to
escape through a wooded area, but one of the officers managed to grab him.  Cervantes was brought to the scene of his
arrest and identified Appellant. 
Approximately an hour had passed since the burglary.  Appellant was wearing a shirt stolen from
Cervantes=s sister=s house,
and he had the batteries stolen from the telephone and Cervantes=s
bracelet in his pocket.      Cervantes had
an opportunity to observe Appellant when he entered the house before he covered
her eyes with a pillowcase, and she peeked at him during the burglary as he led
her through the house.  She testified
that Appellant was in the home for some twenty-five to thirty minutes, and her
description of him matched his actual appearance.  After considering the appropriate factors, we
hold that the trial court did not err by denying Appellant=s motion
to suppress the identification.  We
overrule Appellant=s first point.

 

 

Legal Sufficiency of the
Evidence of a Deadly Weapon

In his second point, Appellant contends that the
evidence is legally insufficient to support the deadly weapon finding.  The Texas Court of Criminal Appeals has
explained,

To hold evidence legally
sufficient to sustain a deadly weapon finding, the evidence must demonstrate
that:  (1) the object meets the statutory
definition of a dangerous weapon, (2) the deadly weapon was used or exhibited Aduring the transaction
from which@ the felony conviction
was obtained, and (3) that other people were put in actual danger.[6]

 

The jury found that Appellant used and exhibited
a deadly weapon in the commission of the burglary, as alleged in the
indictment.  Because a knife is not a
deadly weapon per se, the jury was instructed that a deadly weapon is Aanything
that in the manner of its use or intended use is capable of causing death or
serious bodily injury.@[7]








Cervantes identified a photograph of a knife at
trial.  It was a steak knife with a
serrated edge.  Cervantes testified that
her eyes were covered but that she heard Appellant get the knife.  She would occasionally peek at Appellant,  but Appellant had instructed her to keep her
eyes covered.








While the evidence may be sufficient to show that
the knife was capable of causing serious bodily injury or death, there is no
evidence that in the manner of its use or its intended use it was capable of
causing such injury.  Appellant made no
threats; there is no evidence that he put the knife near Cervantes=s throat
or anywhere near her body.  As the State
points out, Appellant made a menacing gesture with his hand toward Cervantes
before he got the knife, but there is no testimony that he did so after he had
the knife in his hand.  Additionally,
although Cervantes testified that she was scared because she thought he was
going to kill her, she testified that the simple fact that he entered the house
created the fear.  She also testified
that after Appellant grabbed the knife, she did not get a chance to see him
anymore because they were walking through the house.  There is no evidence that Appellant walked
through the house armed with a knife. 
Cervantes testified that she did not know what happened with the knife
but that Appellant never threatened her with it, never tried to stab her, never
tried to cut her, and never did anything to hurt her with the knife.  Indeed, Appellant had placed a pillowcase
over Cervantes=s head to prevent her from
seeing him.  She saw the knife only
because she peeked.

When the police seized Appellant, he no longer
had the knife.  It is unclear how long he
carried the knife or when he disposed of it. 
It is unclear whether he used the knife to pry something open or for
some other purpose.

Consequently, based upon the applicable standard
of review,[8]
we hold that the evidence is legally insufficient to show that in the manner of
its use or intended use, the steak knife was capable of causing death or
serious bodily injury.  We sustain
Appellant=s second point.  Because of our disposition of this point, we
do not reach Appellant=s third point contending that
the evidence is factually insufficient.[9]

Criminal Trespass
Instruction








In his fifth point, Appellant contends that the
trial court erred by failing to instruct the jury on the lesser included
offense of criminal trespass.  A
defendant is entitled to an instruction of a lesser included offense only when
(1) the lesser offense is included within the proof necessary to establish the
offense charged, and (2) evidence exists in the record that would permit a
rational jury to find that if the defendant is guilty, he is guilty only of the
lesser included offense.[10]

Although criminal trespass is included within the
proof of burglary of a habitation,[11]
there is no evidence that if Appellant is guilty, he is guilty only of criminal
trespass.  Cervantes testified that
Appellant told her that he was looking for money and valuables.  Further, when the police found him, he had
the property that was taken from inside the house.  Consequently, we hold that the trial court
did not err by overruling Appellant=s
requested instruction on criminal trespass. 
We overrule Appellant=s fifth
point.

Article 37.07, Section
4(a) Instruction













In his fourth point, Appellant contends that the
trial court erred by failing to properly charge the jury during the punishment
phase on parole and good conduct time as required by the statute.  The trial court was required to instruct the
jury pursuant to article 37.07 section 4(a) of the Texas Code of Criminal
Procedure.[12]  The trial court was required to include the
statutory language verbatim with no deviation.[13]  The trial court omitted the sentence, AIf the
defendant is sentenced to a term of less than four years, he must serve at
least two years before he is eligible for parole.@[14]  The State candidly concedes that the trial
court erred by omitting the sentence. 
The State argues, however, that the error does not rise to the level of
egregious harm, which is the standard we apply because no one objected to the
charge at trial.[15]  The State points out that, because the
minimum confinement that Appellant could receive was five years,[16]
the omitted sentence did not apply to him. 
We agree.  Because Appellant was
not eligible for a four-year sentence, we hold that he was not harmed by the
error and that the error therefore did not rise to the level of egregious
harm.  We overrule Appellant=s fourth
point.

 

 

Conclusion

Having sustained Appellant=s second
point, we modify the judgment to delete the deadly weapon finding.  Having affirmed his first, fourth, and fifth
points, we affirm the trial court=s
judgment as modified.

 

 

LEE
ANN DAUPHINOT

JUSTICE

PANEL B:   DAUPHINOT, WALKER, and MCCOY, JJ.

WALKER, J. filed a dissenting opinion.

PUBLISH

 

DELIVERED:  April 6, 2006

 

 

 

 

 

 

 

 

 








 

 

 

 

 

 

 

 




 
 
 
 
 
 
 




 

 

 

 

 

 

                                COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-246-CR

 

 

CHRISTOPHER
FITZGERALD                                                  APPELLANT

STEWART

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 297TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                   DISSENTING OPINION

 

                                              ------------








Because the evidence is legally sufficient to
support the jury=s deadly weapon finding, I
respectfully dissent.  Viewing all the
evidence in the light most favorable to the deadly weapon finding, a rational
trier of fact could have found that Appellant Christopher Fitzgerald Stewart
used a deadly weapon.  See Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  Giving full play to the responsibility of the
trier of fact to resolve conflicts in the testimony, to weigh the evidence, and
to draw reasonable inferences from basic facts to ultimate facts, the evidence
establishes that Stewart entered Lilliana Cervantes=s sister=s home,
surprised Lilliana, took her into a bedroom and put a pillow case over her
head, grabbed her hand Avery tight,@ and
immediately forced her to the kitchen where she peeked out of the pillow case
hood and observed Stewart locate and pick up a serrated steak knife.  See Lane v. State, 151 S.W.3d 188,
191-92 (Tex. Crim. App. 2004) (noting that an appellate court considers
reasonable inferences from the evidence when conducting a legal sufficiency
review); Sanders v. State, 119 S.W.3d 818, 820 (Tex. Crim. App.
2003).  A photograph of the knife was
introduced into evidence.  After arming
himself with this knife, Stewart forced Lilliana to accompany him through the
home as he selected items to steal.








A deadly weapon question was submitted to the
jury pursuant to article 42.12, section 3(g) of the code of criminal
procedure.  See Tex. Code Crim. Proc. Ann. art. 42.12, '
3g(a)(2) (Vernon Supp. 2005).  Thus, the
jury was asked whether it found that AStewart,
during the commission of the offense or during the immediate flight following
the commission of the offense, used or exhibited a deadly weapon, to wit:  a knife, that in the manner of its use or
intended use was capable of causing death or serious bodily injury,@ and the
jury answered affirmatively.  The
majority concludes that legally insufficient evidence exists for a reasonable
juror to determine beyond a reasonable doubt that the knife=s manner
of use or intended use was to cause serious bodily injury or death.[1]








Regarding the first questionCwhether
the knife was a deadly weaponCas the
majority points out, a knife is not a deadly weapon per se, and as such, the
jury was instructed that a deadly weapon is Aanything
that in the manner of its use or intended use is capable of causing death or
serious bodily injury.@ 
See Tex. Penal Code Ann. '
1.07(a)(17)(B) (Vernon Supp. 2005) (defining a deadly weapon).  The court of criminal appeals has held that Aan
object is a deadly weapon if the actor intends a use of the object in
which it would be capable of causing death or serious bodily injury.@  McCain v. State, 22 S.W.3d 497, 503
(Tex. Crim. App. 2000) (emphasis added) (holding that Athe mere
carrying of a butcher knife during such a violent attack . . . was legally
sufficient to show that the butcher knife was a deadly weapon@).  Factors to consider in determining whether
the knife was capable of causing death or serious bodily injury include (1) the
size, shape, and sharpness of the knife; (2) the manner in which the appellant
used the weapon; (3) the nature or existence of inflicted wounds; (4) testimony
of the knife=s life-threatening capabilities;
(5) the physical proximity between the victim and the knife; and (6) the words
spoken by the appellant.  See,
e.g., Thomas v. State, 821 S.W.2d 616, 619-20 (Tex. Crim.
App. 1991); Tisdale v. State, 686 S.W.2d 110, 115 (Tex. Crim. App. 1985)
(op. on reh=g); Williams v. State,
575 S.W.2d 30, 32 (Tex. Crim. App. [Panel Op.] 1979); Garcia v. State,
17 S.W.3d 1, 4 (Tex. App._Houston
[1st Dist.] 1999, pet. ref=d); see
also Cossey v. State, No. 02-05-00032, 2006 WL 59507, at *3 (Tex. App.CFort
Worth Jan. 12, 2006, no pet.) (not designated for publication).








Regarding the second questionCwhether
the appellant Aused or exhibited@ a
deadly weapon during the criminal transaction the phraseCAused . .
. a deadly weapon@ during the commission of the
offense means only that the deadly weapon was employed or utilized in order to
achieve its purpose.  Tex. Code Crim. Proc. Ann. art. 42.12, '
3g(a)(2); Patterson v. State, 769 S.W.2d 938, 941 (Tex. Crim. App.
1989).  This statutory language
encompasses or extends to any employment of a deadly weapon, even its simple
possession, if such possession facilitates the associated felony.  Patterson, 769 S.W.2d at 941.  Thus, one can Ause@ a
deadly weapon without exhibiting it.  Id.

Here, Lilliana=s
testimony and the photograph of the knife supply the only evidence of the knife=s
physical characteristics and of how Stewart used the knife.  The photograph of the knife shows that it was
a serrated steak knife.  Lilliana
testified that after Stewart gained physical control over her and covered her
eyes with a pillowcase, Stewart directed her to the kitchen.  Once in the kitchen, he obtained a
knife.  Lilliana testified that Stewart
grabbed her very tightly and proceeded to take her through the house.  Lilliana is from Mexico and does not speak
English, yet she testified that Stewart was mad, that he said Ashut up,@ and
that he repeatedly demanded money.  The
jury could reasonably infer from this evidence that the knife was capable of
causing death or serious bodily injury in its manner of use or intended
use.  See Tex. Penal Code Ann. '
1.07(a)(17)(B); McCain, 22 S.W.3d at 503.








Additionally, the jury could reasonably infer
from this evidence that Stewart went to the kitchen first for the exact purpose
of obtaining a knife, that he wanted a knife in his hand to facilitate the
offense of stealing items, and that the knife was used by Stewart during the
offense to ensure Lilliana=s
cooperation.  The fact that Lilliana
cooperated and thereby averted any need by Stewart to overtly threaten her or
to cut her does not lessen his Ause@ of the
knife to ensure his success in stealing the items he desired.  See McCain, 22 S.W.3d at 503.  Although Stewart did not exhibit the deadly
weapon, he did use it.

Under a proper application of the legal sufficiency
standard of review, the evidence is legally sufficient to support the jury=s deadly
weapon finding.  Accordingly, I dissent.

 

 

SUE
WALKER

JUSTICE

 

PUBLISH

 

DELIVERED:  April 6, 2006

 











[1]Tex. Code Crim. Proc. Ann. art. 37.07, ' 4(a) (Vernon Supp. 2005).





[2]See id.





[3]Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968).





[4]Neil v. Biggers,
409 U.S. 188, 199, 93 S. Ct. 375, 382 (1972).





[5]Id. at 199.





[6]Drichas v. State, 175 S.W.3d 795, 798
(Tex. Crim. App. 2005) (citations omitted).





[7]Tex. Penal Code Ann. ' 1.07(a)(17)(B) (Vernon Supp. 2005).





[8]See Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 S.W.3d 608, 612 (Tex.
Crim. App. 2001); Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999), cert. denied, 529 U.S. 1131 (2000).





[9]See Tex. R. App. P. 47.1.





[10]See Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Rousseau v. State,
855 S.W.2d 666, 672-73 (Tex. Crim. App.), cert. denied, 510 U.S. 919
(1993); Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981).





[11]See Daniels v. State, 633 S.W.2d 899, 900 (Tex. Crim. App. 1982).





[12]See Tex. Code Crim. Proc. Ann. art. 37.07, ' 4(a).





[13]See Luquis v. State, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002).





[14]See Tex. Code Crim. Proc. Ann. art. 37.07, ' 4(a).





[15]See Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985) (op. on reh=g); see also Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); Hutch
v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).





[16]See Tex. Penal Code Ann. '' 12.32 (Vernon 2003) (providing that the minimum
confinement for a first-degree felony is five years), 12.42(b) (Vernon Supp.
2005) (providing that the punishment for a second-degree felony when the
defendant has one prior felony conviction is that of a first-degree felony),
30.02(c)(2) (Vernon 2003) (providing that burglary of a habitation is a
second-degree felony).





[1]The majority concedes that evidence exists that the
steak knife was capable of causing serious bodily injury or death, but not that
it was capable of causing such injury or death in the manner of its use or
intended use.















 [COMMENT1]

Majority
by Justice Dauphinot; Dissent by Justice Walker